UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NICHOLAS ZIMMERMAN,

                            Petitioner,

        – against –                                    **OPINION AND ORDER**

SUPERINTENDENT CONWAY,                           10 Civ. 1393 (ER) (PED)

                            Respondent.

---

Ramos, D.J.:

        *Pro se* Petitioner Nicholas Zimmerman ("Zimmerman" or "Petitioner") filed a petition

for a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition") on February 22, 2010.  Doc. 2.

The Honorable Kenneth M. Karas, to whom this case was previously assigned, referred the

Petition to Magistrate Judge Paul E. Davison on March 26, 2010.  Doc. 4.  The case was

reassigned to the undersigned on January 6, 2012.  Doc. 25.

        On May 7, 2013, Judge Davison issued a Report and Recommendation ("Report" or

"R&R"), recommending that the Petition be denied in full.  Doc. 28.  Petitioner filed written

objections to the Report on or around November 4, 2013.  Doc. 31 ("Objections").[1]  For the

reasons stated herein, the Court adopts the Report in its entirety.

---

[1] By Order dated May 21, 2013, the Court extended the deadline for Petitioner's written objections to July 24, 2013.
Doc. 29.  On October 11, 2013, having not received any objections to the Report, the Court ordered Petitioner to file
any objections by November 11, 2013.  Doc. 30.  On or around November 4, 2013, Petitioner filed his objections
with the Court.  Doc. 31; *see Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (finding that a *pro se* prisoner's
complaint is deemed filed on the date the prisoner turns his complaint over to prison officials).

# I. BACKGROUND

The factual background and procedural history relevant to the Petition are set forth in Judge Davison's Report, familiarity with which is assumed. *See* Report at 1–14.[2]

On April 16, 2002, Petitioner arrived at Sing Sing Correctional Facility in Ossining, New York ("Sing Sing") to serve a 15-year prison term for his conviction, after a jury trial in the Supreme Court of the State of New York, Queens County, of criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, and menacing in the second degree. Affidavit in Opposition to Petition for Writ of Habeas Corpus ("Respondent Aff.") (Doc. 9) at 1 n.1; *see also People v. Zimmerman*, 309 A.D.2d 824 (2d Dep't 2003).[3]

On August 12, 2004, while Petitioner was serving his prison term for the Queens County conviction, an indictment was filed charging Petitioner and another inmate, Steven Finley, with attempting to escape from Sing Sing. Respondent Aff. at 4. In sum, Petitioner and Finley were accused of devising a scheme whereby armed accomplices disguised as uniformed correction officers snuck into the prison on three separate occasions in April and May 2003, each time attempting to smuggle additional uniforms into the facility to enable Petitioner's and Finley's escape. *Id.* at 1–4. After a state police investigation, six accomplices confessed to roles in the scheme and ultimately testified against the two inmates. *See id.* at 4.

Following a joint jury trial in Westchester County Court, on April 8, 2005, Petitioner was convicted of one count of bribery in the third degree, three counts of attempted escape in the first degree, five counts of promoting prison contraband in the first degree, one count of promoting

---

[2] At the outset, Petitioner objects to the "Background" section of the Report, on the ground that it "does not accurately reflect the evidence at trial." Objections at 2–4. Having reviewed *de novo* that portion of the Report, as well as the portions of the record referenced therein, the Court finds that the Report offers an accurate description of the factual background and procedural history of this case.

[3] In 2006, Zimmerman filed a petition for a writ of habeas corpus with respect to his conviction in Queens County. The Eastern District of New York denied the petition. *See Zimmerman v. Burge*, 492 F. Supp. 2d 170 (E.D.N.Y. 2007).

prison contraband in the second degree, and conspiracy in the fourth degree. *See id.* at 10. On June 7, 2005, Petitioner was sentenced to an aggregate prison term of 12.5 to 25 years, to run consecutively to the undischarged portion of the sentence Petitioner was already serving for his Queens County conviction. *Id.* The Second Department of the New York State Appellate Division affirmed Petitioner's convictions and sentence on February 5, 2008. *People v. Zimmerman*, 48 A.D.3d 492 (2d Dep't 2008). On April 3, 2009, the New York Court of Appeals denied Petitioner's request for leave to appeal. *People v. Zimmerman*, 12 N.Y.3d 823 (2009).

On or about February 22, 2010, Petitioner filed the instant Petition, raising the same arguments he made in a *pro se* supplemental brief on direct appeal. Petition at 4; Respondent's Memorandum of Law and Exhibits ("Respondent's Mem.") (Doc. 10), Ex. C ("Petitioner's Mem."). Specifically, Petitioner raises nineteen claims (labeled Points A through S) that can be grouped into four categories as follows: (1) he was deprived of his right to counsel (Point A); (2) his trial counsel was ineffective (Points B–H); (3) the trial court erred (Points I–M); and (4) the evidence was legally insufficient to convict him (Points N–S). On June 19, 2012, Judge Davison issued the Report, recommending that the Petition be denied in its entirety.

## II. STANDARD OF REVIEW

### A. AEDPA Review of the State Court Proceedings

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214, habeas petitions under 28 U.S.C. § 2254 may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2). This deference is required under the

AEDPA if, as here, the petitioner's claim "was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d); *see Bell v. Miller*, 500 F.3d 149, 154–55 (2d Cir. 2007).

"Th[e] statutory phrase ['clearly established Federal law as established by the Supreme Court of the United States,'] refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). In order for a federal court to find that the state court's application of Supreme Court precedent was unreasonable, the decision must be objectively unreasonable rather than simply incorrect or erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The factual findings made by state courts are presumed to be correct under the second prong of the AEDPA, and petitioner has the burden to rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997).

### B. Review of the Magistrate Judge's Report

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Parties may raise "specific," "written" objections to the report and recommendation "[w]ithin fourteen days after being served with a copy." *Id.*; *see also* Fed. R. Civ. P. 72(b)(2). A district court reviews *de novo* those portions of the report and recommendation to which timely and specific objections are made. 28 U.S.C. § 636(b)(1)(C); *see also United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38 (2d Cir. 1997). The district court may adopt those parts of the report and recommendation to which no party has timely objected, provided no clear error is apparent from the face of the record. *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008). The district court will also review the report and recommendation for clear error where a party's objections are "merely perfunctory responses"

argued in an attempt to "engage the district court in a rehashing of the same arguments set forth in the original petition." *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (citations and internal quotation marks omitted); *see also Genao v. United States*, No. 08 Civ. 9313 (RO), 2011 WL 924202, at *1 (S.D.N.Y. Mar. 16, 2011) ("In the event a party's objections are conclusory or general, or simply reiterate original arguments, the district court reviews the [R&R] for clear error.").

## III. PETITIONER'S OBJECTIONS

### A. Right to Counsel Claim

Petitioner claims that he was deprived of his right to counsel before trial in three respects: first, he was not provided with counsel on May 28, 2003, the day he was first questioned by law enforcement about the attempted escape; second, his request to speak to an attorney during interrogation was denied; and third, he was not permitted to contact his attorney for some time while he was incarcerated before trial. Petitioner's Mem. at 1–5.

As to the first aspect of Petitioner's claim, Judge Davison concluded that the state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law because Petitioner's Sixth Amendment right to counsel did not attach until the "accusatory instrument" (*i.e.*, the felony complaint) was filed in February 2004. Report at 21–23. Judge Davison also concluded that the state court's denial of the third aspect of Petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established federal law because Petitioner failed to identify any actual injury, given that he was able to access counsel during the relevant time period. *Id.* at 23–25. Judge Davison concluded that the second aspect of Petitioner's claim did not warrant habeas review because Petitioner's statements

made to law enforcement during that initial interrogation were never admitted at trial, and thus Petitioner was not in custody because of that potential violation of his rights. *Id.* at 23.

In his Objections, Petitioner argues that the filing date of the accusatory instrument is "irrelevant." Objections at 5. Reviewing this aspect of the claim *de novo*, the Court disagrees. In *Meadows v. Kuhlmann*, the Second Circuit explained that "[t]he Sixth Amendment right to counsel applies only to 'critical stages' of a criminal prosecution," and that "the Supreme Court has looked to state law to determine what is a 'critical stage', or the commencement of the adversarial process, for purposes of the Sixth Amendment." 812 F.2d 72, 76 (2d Cir. 1987) (citing *Hamilton v. Alabama*, 368 U.S. 52 (1961), *Coleman v. Alabama*, 399 U.S. 1 (1970), and *White v. Maryland*, 373 U.S. 59 (1963)). Looking to the law of New York, where a "criminal action . . . commences with the filing of an accusatory instrument," the Court in *Meadows* found that the right to counsel attaches "with the filing of the felony complaint." *Id.* at 77 (citing N.Y. C.P.L. § 100.05). More recently, in *United States v. Reed*, the Second Circuit reaffirmed that "[t]he Sixth Amendment right of the 'accused' to assistance of counsel . . . does not attach until a prosecution is commenced," and that "[u]nder New York law, '[a] criminal action is commenced by the filing of an accusatory instrument with a criminal court.'" 756 F.3d 184, 187 (2d Cir. 2014) (first quoting *Rothgery v. Gillespie County, Texas*, 554 U.S. 191, 198 (2008), then quoting N.Y. C.P.L. § 100.05). Here, as Judge Davison properly concluded, Petitioner's right to counsel had not yet attached at the time of the May 28, 2003 interrogation, because the felony complaint against him was not filed until February 2004. Thus, the state court's denial of this aspect of his claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

Petitioner also objects to Judge Davison's conclusion that he is not in custody because of any violation of his right to counsel. Objections at 5. Petitioner argues that had he had counsel

in the early stages of his case, he would have been able to prove that he did not possess a cell phone at Sing Sing and he could have located and interviewed certain witnesses that could not be found at the time of trial. *Id.* In the Report, Judge Davison concluded only that any violation of Petitioner's rights stemming from the denial of his request for counsel at the May 28, 2003 interrogation did not warrant federal habeas relief, because the statements Petitioner made during that interrogation were never admitted at trial. Reviewing this aspect of Petitioner's claim *de novo*, the Court agrees with Judge Davison's reasoning. To the extent Petitioner is arguing that his lack of counsel prior to February 2004 prejudiced him at trial, however, the Court reiterates that Petitioner's Sixth Amendment right to counsel did not attach until the filing of the felony complaint.

### B. Ineffective Assistance of Counsel Claims

#### 1. Failure to Move for Dismissal on the Basis of Pre-Indictment Delay

Petitioner claims that his trial counsel was ineffective for failing to move to dismiss the charges against him based on the State's unreasonable delay in prosecuting him. Petitioner's Mem. at 6–20. Petitioner notes that although he was placed in solitary confinement and interrogated about the escape in May 2003, he was not charged until February 2004, not indicted until August 2004, and not released from solitary confinement until November 2004. *Id.* at 7–8. Petitioner argues that this delay caused him prejudice because certain witnesses became unavailable and certain evidence was lost, and because he remained in solitary confinement during this time. *Id.* at 13–18. In the Report, Judge Davison concluded that the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law because Petitioner failed to establish that a motion to dismiss the indictment on the basis of pre-indictment delay would have been successful. Report at 26–28.

In reaching that conclusion, Judge Davison found that Petitioner's assertion that the process was delayed in order to keep him in solitary confinement was too "conclusory," "bare," and "self-serving" to support a claim for federal habeas relief. *Id.* at 27. Judge Davison also found that the State's asserted reason for the delay—that the investigation was ongoing—was justifiable. *Id.* Petitioner objects to Judge Davison's conclusion that Petitioner's assertion was unsupported and that the delay in prosecution was justified by an ongoing investigation, arguing that the trial court found that there was no ongoing investigation and that the government placed Petitioner in solitary confinement in order to obtain a confession. Objections at 6 (citing Judge Robert Dibella's decision on Petitioner's *Huntley* hearing[4]). Reviewing this claim *de novo,* the Court agrees with Judge Davison's conclusion.

To obtain federal *habeas* relief based on his claim that counsel was ineffective in failing to move to dismiss his indictment based on pre-indictment delay, Petitioner must show that the state court's denial of this claim was contrary to, or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Under *Strickland*, Petitioner must demonstrate that his counsel's performance "fell below an objective standard of reasonableness" and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. Petitioner has not satisfied either of these requirements because he cannot show that his attorney would have prevailed had he made a motion to dismiss the charges against him on grounds of pre-indictment delay. Specifically, Petitioner has not established that the prosecution intentionally delayed filing his indictment for the purpose of gaining a tactical advantage. His argument that the delay was motivated by the prosecution's desire to keep Petitioner housed in administrative segregation to

---

[4] The purpose of a *Huntley* hearing is to determine whether any statements made by a defendant should be suppressed. *See People v. Huntley*, 15 N.Y.2d 72 (1965).

be able question him under more favorable conditions is speculative and inadequately supported. Petitioner's Mem. at 10–12. Because Petitioner has not adequately supported his contention that the delay was an intentional device to gain a tactical advantage, he cannot show that the motion to dismiss would have been successful. *See Denis v. Upstate Corr. Facility*, 361 F.3d 759, 760 (2d Cir. 2004) (citing *United States v. Marion*, 404 U.S. 307, 324, (1971)) ("[T]o prevail on a claim of unconstitutional pre-indictment delay, a petitioner must show that he suffered actual prejudice as the result of the delay and that the delay was an intentional device to gain a tactical advantage."); *Wood v. Bartholomew*, 516 U.S. 1, 8, (1995) (federal courts should not grant "habeas relief on the basis of little more than speculation with slight support"). Therefore, Petitioner cannot establish that counsel was unconstitutionally ineffective under *Strickland* in failing to make the motion. Accordingly, the state court's decision denying Petitioner's claim was neither contrary to nor an unreasonable application of *Strickland*, and the claim must be denied.

### 2. Failure to Request a *Wade* Hearing

Petitioner claims that his trial counsel was ineffective for failing to request a *Wade* hearing[5] to contest the admissibility of Dubose's Tony Dubose's identification of him at trial. Petitioner's Mem. at 19–34. Dubose testified at trial about conversations he had with Zimmerman over the phone regarding the escape plans. Tr. at 903–09, 931.[6] When questioned about his ability to identify Zimmerman as the individual with whom he was speaking over the phone, Dubose testified that although he had never met with or spoken to Zimmerman before the

---

[5] "The purpose of a *Wade* hearing is to determine [before] the trial whether pretrial identification procedures have been so improperly suggestive as to taint an in-court identification." *Lynn v. Biden*, 443 F.3d 238, 248 (2d Cir. 2006) (quoting *Twitty v. Smith*, 614 F.2d 325, 333 (2d Cir. 1979)); *see United States v. Wade*, 388 U.S. 218 (1967).

[6] Dubose also testified regarding his involvement in the scheme, including posing as a correction officer and attempting to enter the facility with a 9mm pistol.

phone calls, he knew of him by his nickname, "Puzz," because they lived in the same neighborhood in Brooklyn. Tr. at 892, 993–94. He testified that Puzz was well-known in the neighborhood and that he had seen him around the neighborhood and heard him speak multiple times, including once at an album release party where he spoke over a microphone. Tr. at 892–93, 993–94, 1020–21, 1030–31. Dubose also made an in-court identification of Petitioner as the person he knew from his neighborhood. Tr. at 893. He also testified that Petitioner identified himself as "Puzz" when he spoke to him during phone calls about the escape plan. Tr. at 904. He further testified that he did not know Zimmerman's true name until he was arrested and told by Officer Daughtry, and that Daughtry showed him a picture of Zimmerman. Tr. at 998–1001.

Petitioner claims that when his counsel learned that Officer Daughtry showed Dubose a photo of Zimmerman, he should have immediately requested a *Wade* hearing. Petitioner's Mem. at 30–32. Petitioner claims that at a *Wade* hearing, counsel would have been able to prove that Dubose's identification was unreliable, given that he had never met with or spoken to Zimmerman before the phone calls at issue. *Id.* at 33–34. In the Report, Judge Davison concluded that the state court's decision denying this claim was neither contrary to, nor an unreasonable application of *Strickland*. Report at 28–29. Having reviewed this claim *de novo*, the Court agrees.

In assessing whether the failure to request a *Wade* hearing constitutes ineffective assistance, the Second Circuit "has demanded some showing of the likelihood for success at the hearing." *Lynn v. Bliden*, 443 F.3d 238, 249 (2d Cir. 2006). To prevail at a *Wade* hearing, Petitioner would have first had to show that the pretrial identification procedures were unduly and unnecessarily suggestive. *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001). "If the procedures were not suggestive, the identification evidence presents no due process obstacle to

admissibility; no further inquiry by the court is required, and '[t]he reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury.'" *Id.* (quoting *Foster v. California*, 394 U.S. 440, 442 n.2 (1969)) (citation omitted). "If the court finds, however, that the procedures were suggestive, it must then determine whether the identification was nonetheless independently reliable." *Id.*

Even if it was unduly suggestive for Daughtry to show Dubose the photograph of Zimmerman and/or to tell Dubose Zimmerman's true name, Petitioner has not established that Dubose's identification of him in that respect was not independently reliable. The reliability of Dubose's identification is supported by his testimony that he knew Zimmerman from the neighborhood, that he knew of him as "Puzz," that he had seen and heard Zimmerman speak before, including once over a microphone, that Zimmerman identified himself as "Puzz" in the phone calls at issue, and that he spoke with Zimmerman over the phone a few times. Tr. at 892–93, 903–09, 931, 993–94, 1020–21, 1031. Petitioner has failed to establish that the trial court, taking into account the totality of the circumstances, *see Neil v. Biggers*, 409 U.S. 188, 199–200 (1972), would likely have found Dubose's identification unreliable and suppressed the testimony. Accordingly, the state court's decision denying Petitioner's claim was neither contrary to nor an unreasonable application of *Strickland*, and the claim must be denied.

### 3. Failure to Request a Missing Witness Charge

Petitioner claims that his trial counsel was ineffective for failing to properly request a missing witness charge regarding witnesses Kira Scott and Tiana Payne, and for failing to request a missing witness charge at all regarding witnesses "Rock" and "Smooth." Petitioner's Mem. at 35–50. In the Report, Judge Davison concluded that the state court's decision denying these claims was not contrary to or an unreasonable application of *Strickland*, because Petitioner

cannot establish that a missing witness charge was warranted given that none of these individuals was under the control of the prosecution, and, instead, all appeared to be favorable to Petitioner. Report at 33–34. Judge Davison also reasoned that, in any event, Petitioner failed to show that the result of the proceeding would have been different had the charge been given. *Id.* at 34. Petitioner objects to Judge Davison's recommendation on the basis that the prosecution failed to show, pursuant to *People v. Gonzalez*, 68 N.Y.2d 424 (1986), both that the witnesses were favorable to Petitioner at the time of the trial and also that they were hostile to the prosecution. Objections at 8. Having reviewed this claim *de novo*, the Court agrees with Judge Davison's conclusions.

"The 'missing witness' instruction allows a jury to draw an unfavorable inference based on a party's failure to call a witness who would normally be expected to support that party's version of events." *People v. Savinon*, 100 N.Y.2d 192, 196 (2003).

> *Gonzalez* established three preconditions for the missing witness instruction. First, the witness's knowledge must be material to the trial. Second, the witness must be expected to give noncumulative testimony favorable to the party against whom the charge is sought. This has been referred to as the "control" element, which requires the court to evaluate the relationship between the witness and the party to whom the witness is expected to be faithful. Third, the witness must be available to that party.

*Id.* at 197. In *Savinon*, the New York Court of Appeals explained that control "might more accurately be referred to as the 'favorability' component of the [uncalled witness] rule." *Id.* at 200. Thus, in that case, the court found that a witness would have been so "favorable" to defendant as to warrant a missing witness instruction where the defendant and witness "had been friends and business associates," and had at one time a "close[] . . . relationship, even if it had not remained current." *Id.* at 201. The court did not evaluate whether the witness was hostile to the prosecution and, in fact, the court noted that the witness had a relationship with the complainant

as well, albeit one that "did not begin to approach the level of friendship that [the witness] had with defendant." *Id.*

Here, as Judge Davison concluded, Petitioner fails to show that his counsel could have successfully obtained a missing witness charge, since Petitioner fails to establish that any of the four missing witnesses were favorable to the prosecution, and all appear to have in fact been favorable to Petitioner. Accordingly, the state court's decision denying Petitioner's ineffective assistance claims on these grounds cannot be said to have been contrary to or an unreasonable application of *Strickland*. Petitioner's claims must therefore be denied.[7]

### 4. Failure to Request an Interested Witness Charge

Petitioner claims his trial counsel was ineffective for failing to request an interested witness charge as to the six accomplice witnesses who testified against him. Petitioner's Mem. at 51–65. In the Report, Judge Davison concluded that Petitioner failed to establish either prong of *Strickland* because the trial court did give an interested witness charge. Report at 35. In relevant part, the trial court charged the jury as follows:

> You may consider whether a witness had or did not have a motive to lie. You are not required to reject the testimony of witness [*sic*] who has a motive to lie or to accept the testimony of a witness who has no motive to lie. You may, however, on one hand consider and to what extent [*sic*], if any, a witness' motive to lie tended not to support the truthfulness of that witness' testimony. On the other hand, you may consider whether and to what extent, if any, a witness' lack of motive to lie tended to support the truthfulness of that witness' testimony. You may consider whether a witness hopes for or expects to receive a benefit for testifying. If so, you may consider whether and to what extent, if any, it affected the truthfulness of the witness' testimony. In term [*sic*] determining the credibility of a witness and weight to be given by you to their testimony you may consider the interest of the witness in the outcome of the trial. A witness is an interested witness when by

---

[7] For the same reason, Petitioner's claim that the trial court erred in denying counsel's request for a missing witness charge with respect to Scott and Payne must also be denied. *See* Petitioner's Mem. at 35.

> reason of relationship, friendship, antagonism, or prejudice in favor of or against one party or the other [*sic*] their testimony in your judgment is in fact bias [*sic*] or likely bias [*sic*] toward the side or party they favor. If you find that any witness is an interested witness you should consider such interest in determining the credibility of their testimony and weight to be given to it.

Tr. at 2306–07. Judge Davison reasoned that in light of this charge, defense counsel's emphasis on the accomplice witnesses cooperation agreements on both cross-examination and summation, and the court's instructions as a whole, it could not be said that counsel's failure to request a more specific jury instruction constituted deficient conduct or made it reasonably probable that the outcome of the proceeding would have changed had he done so. Report at 35–36.

In his Objections, Petitioner argues that the court should have directly told the jury that the six accomplice witnesses were all interested witnesses who stood to benefit from Petitioner's conviction. Objections at 9. The Court agrees with Judge Davison, however, that a more specific instruction was not necessary under the circumstances. *See Cook v. Pearlman*, 212 F. Supp. 2d 258, 265 (S.D.N.Y. 2002) (holding that the failure to give a more specific instruction did not violate a defendant's due process rights where defense counsel was permitted "ample latitude on cross-examination and in summation to call into question each witness' motive for testifying"). Accordingly, the state court's denial of this claim was neither contrary to nor an unreasonable application of *Strickland*, and the claim must be dismissed.[8]

### 5. Failure to Request an Accomplice Corroboration Charge

Petitioner claims his trial counsel was ineffective for failing to request an accomplice corroboration charge that specifically noted that one accomplice's testimony could not corroborate the testimony of another accomplice. Petitioner's Mem. at 65. In the Report, Judge

---

[8] For the same reason, Petitioner's claim that the trial court erred in failing to give an interested witness charge must also be denied. *See* Petitioner's Mem. at 42.

Davison concluded that Petitioner failed to establish either prong of *Strickland* because the trial court properly charged the jury on accomplice testimony and the need for independent, corroborating evidence. Report at 36–37. In relevant part, the trial court charged the jury as follows:

> I instruct you that the following witnesses, Tony Dubose, Latrina Boyd, Barry Alexander, Quantrice Wilson, Jatayna Belnavis and Tamara Johnson are accomplices as a matter of law. . . . A defendant cannot be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense. Under that law the defendants on trial may not be convicted solely on the testimony of a witness who is an accomplice. Our law views with suspicion the testimony of accomplice [*sic*] in a criminal trial since by his own testimony he or she was a participant in the events charged in the indictment. This is especially true where the accomplice witness has sought or received or been promised some consideration in exchange for their testimony. It is for this reason that the law requires that the testimony of a accomplice [*sic*] must be corroborated by other evidence apart from the accomplice's own testimony *or the testimony of any other accomplice*. To be sufficient, such other evidence standing alone must satisfy the jury that it tends to connect the defendants with the commission of the crime in such a way that may reasonably satisfy you that the accomplice is telling the truth.

Tr. at 2292–94 (emphasis added). The trial court also repeated the charge during jury deliberations upon the jury's request. Tr. at 2409–13. Petitioner's assertion that the trial court did not properly instruct the jury as to accomplice testimony is thus without merit, and the Court agrees with Judge Davison that Petitioner's claim must be denied.[9]

### 6. Failure to Object to Accomplice Testimony Concerning Plea Agreements

Petitioner claims his trial counsel was ineffective for failing to object to the accomplice witnesses' testimony regarding the nature of their plea agreements, which Petitioner argues had

---

[9] Since the accomplice corroboration charge was given, Petitioner's claim that the trial court erred in failing to give the charge must also be denied. *See* Petitioner's Mem. at 65.

no relevance to the trial and only bolstered the prosecution's case. Petitioner's Mem. at 66. In the Report, Judge Davison concluded that the testimony was clearly admissible and counsel's objection would have been futile. Report at 37–38.

Petitioner's objections to this portion of the Report simply reiterate his original arguments. *See* Objections at 9. Accordingly, the Court reviews this portion of the Report for clear error only, rather than *de novo*. *See Genao v. United States*, No. 08 Civ. 9313 (RO), 2011 WL 924202, at *1 (S.D.N.Y. Mar. 16, 2011). The Court has carefully reviewed Judge Davison's recommendation regarding this claim and finds no error, clear or otherwise. As such, the Court adopts Judge Davison's recommendation that this claim be denied for the reasons stated in the Report. *See* Report at 37–38.

### C. Trial Court Error Claims

#### 1. Denial of Request to "Release the Chokehold" on Accomplice Witnesses

Petitioner claims that the trial court committed reversible error when it "denied and/or ignored [his] request to instruct the prosecution to 'release the chokehold' it had on the accomplice witnesses." Petitioner's Mem. at 67. Specifically, Petitioner argues that the District Attorney's Office prohibited the witnesses from speaking to anyone without their consent and that this practice prejudiced his ability to conduct his defense. *Id.* at 69–70. In the Report, Judge Davison concluded that the state court's denial of this claim was not contrary to or an unreasonable application of clearly established federal law, because Petitioner's accusation was unsupported and thus insufficient to show a violation of due process. Report at 40. In his Objections, Petitioner argues that his accusation was not unsupported, because the cooperation agreements signed by certain of the witnesses "clearly stated that they could not 'reveal his or

her cooperation, or any information derived therefrom, to any third party without the consent of the District Attorney.'" Objections at 10.

"Witnesses . . . are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them." *Gregory v. United States*, 369 F.2d 185, 188 (D.C. Cir. 1966). However, "any witness has the right to refuse to be interviewed if he so desires." *Johnston v. Nat'l Broadcasting Co.*, 356 F. Supp. 904, 910 (E.D.N.Y. 1973) (citing *Byrnes v. United States*, 327 F.2d 825, 832 (9th Cir. 1964)).

Petitioner never presented the trial court with competent evidence that that the District Attorney's Office instructed witnesses not to speak to the defense. Instead, at a pre-trial proceeding, Petitioner alleged that "[t]he District Attorney's office [was] stopping [his] investigator [from] speaking to the witnesses," relaying statements allegedly transmitted from the witnesses to the investigator to Petitioner. Tr. at 31, 169–70, 176. In response, the trial court judge stated that he was willing to listen to whatever competent evidence there was on the topic, but that Petitioner had only put forth "hearsay" or "double hearsay," and, accordingly, there was nothing before him on the matter. Tr. at 170–76. Neither Petitioner nor Petitioner's counsel ever suggested that the cooperation agreements themselves prevented witnesses from speaking with the defense, and, in fact, the record shows otherwise. *See, e.g.*, Tr. at 33 (Petitioner stating that he spoke to two witnesses for a number of hours each); Tr. at 1173–74, 1212–13, 1230–31 (one of the witnesses, Barry Alexander, testifying that he was never told not to speak to Petitioner and that he actually did speak to Petitioner several times in the preceding thirty days); Tr. at 32–33 (Assistant District Attorney representing that the witnesses were told they could speak to an investigator for the defense, but that they expressed a desire not to, given Petitioner's "history of violence and manipulation"). Accordingly, the state court's decision denying this claim was

neither contrary to nor an unreasonable application of federal law, and the claim must be dismissed.[10]

### 2. Allowing Daughtry to Bolster the Accomplices' Testimony

Petitioner claims that the trial court erred when it permitted Detective Daughtry to "bolster the truthfulness of the accomplices' testimony" with erroneous, cumulative, unnecessary and prejudicial testimony, over repeated objections. Petitioner's Mem. at 73. Petitioner argues that Daughtry's testimony "added government prestige to the People's already meritless case." *Id.* In the Report, Judge Davison concludes that this claim is procedurally barred from federal *habeas* review because the Second Department determined that the issue was "unpreserved for appellate review," invoking New York's procedural rules regarding contemporaneous objections to deny the claim. Report at 42. Petitioner objects to this conclusion and argues that the issue is preserved because defense counsel objected to Daughtry's testimony multiple times when he was on the stand. Objections at 31.

"[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989) (internal citations and quotation marks omitted). Despite the fact that the Second Department did not include a citation to the state procedural rule, the Court agrees with Judge Davison's conclusion that the Second Department relied on New York's

---

[10] In conjunction with this claim, Petitioner argues that the prosecution improperly refused to turn over home and cellular telephone numbers for the accomplice witnesses. Petitioner's Mem. at 70. However, "no clearly established Supreme Court precedent exists on this precise issue," *Estrada v. West*, No. 05 Civ. 549 (DNH), 2009 WL 909623, at *5 (N.D.N.Y. Mar. 31, 2009), and thus the state court's decision denying this claim cannot be said to be contrary to or an unreasonable application of federal law.

cotemporaneous objection rule, N.Y. Crim. Proc. Law § 470.05, to determine that petitioners

claim was "unpreserved for appellate review,. Report at 42. The fact that, in addition to being

procedurally barred, the Second Department also declared that petitioner's claim was meritless

does not affect the result because the court relied on the state procedural law as an independent

and adequate ground for its decision. *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990)

("[F]ederal habeas review is precluded as long as the state court explicitly invokes a state

procedural bar rule as a separate basis for decision.") (quoting *Harris*, 489 U.S. 255, n. 10

(quotation marks omitted)); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, n. 4 (2d Cir. 2000);

*Harris*, 489 U.S. 255, n. 10 ("We note that we have held that where a state court says that a

claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a

claim is not preserved.") Petitioner does not show cause and resulting prejudice, nor a

fundamental miscarriage of justice sufficient for the court to circumvent the procedural bar;

therefore, this claim must be dismissed.

### 3. Denial of Motion for Severance

Petitioner claims that the trial court erred when it denied his motion to sever his trial from

that of his co-defendant, Finley. Petitioner's Mem. at 78. Petitioner's motion was filed during

Finley's attorney's opening statement, in which the attorney attributed responsibility for planning

and organizing the attempted escape to Petitioner. *Id.* Petitioner argues that he was unduly

prejudiced by the fact that Finley's attorney placed blame on Petitioner, labeled him "a fraud and

a liar," and acted as a "second prosecutor" against Petitioner. *Id.* In the Report, Judge Davison

concluded that this claim is procedurally barred from federal *habeas* review because the Second

Department denied the motion as untimely given that the motion was made after the

commencement of trial. Report at 44–45. Judge Davison also determined that, even if the state

court decision to deny the severance motion on timeliness grounds was not an independent an adequate procedural bar on federal *habeas* review, the claim should be dismissed because the state court's denial of the severance motion is not a contrary to or an unreasonable application of clearly established federal law. *Id.* at 45–48. Petitioner objects to Judge Davison's conclusions because he claims that he raised the severance issue as soon as he knew that Finley's defense would prejudice him, and that the trial court's instructions to the jury did not cure this prejudice. Objections at 10–11.

The Court agrees with Judge Davison that it is clear from the language of the Second Department's decision that it actually relied upon New York's procedural rules under governing pretrial motions to deny Petitioner's severance claim. *Id.* at 45; N.Y. Crim. Proc. L§ 255.20. The denial of Petitioners motion as untimely constitutes and independent and adequate procedural bar that precludes federal *habeas* review. *See Harris v. Reed*, 489 U.S. 255, 262 (1989); *see also Chappero v. West*, No. 04 CV 8018 KMWDCF, 2009 WL 2058534, at *18 (S.D.N.Y. July 15, 2009) (finding that a state appellate court denial of a motion as untimely was an application of a New York procedural rule N.Y. Crim. Proc. L. § 255.20, and an independent and adequate ground for the denial of the petitioner's claim, precluding federal *habeas* review). Petitioner's claim must therefore be denied because he has not shown cause and resulting prejudice, nor a fundamental miscarriage of justice sufficient for the court to circumvent the procedural bar. *Harris*, 489 U.S. at 262.

### 4. Affirming Shackling of Petitioner during Grand Jury Testimony

Petitioner claims that the trial court erred by failing to dismiss the indictment on the ground that Petitioner was shackled and surrounded by correctional officers when presented to the grand jury. Petitioner's Mem. at 79–83. Judge Davison's Report concluded that this claim

must be denied because "[i]t is well-settled that a claim involving an error in a grand jury proceeding is not cognizable upon federal *habeas* review" because "[t]here is no federal constitutional right to a grand jury" and "any defect in the grand jury proceeding is cured by petitioner's subsequent conviction." Report at 49. Petitioner objects, arguing that his due process rights were violated because of the state court's failure to appropriately apply state law. Objections at 11.

The Court agrees with Judge Davison conclusion that Petitioner's claims of error relating to the grand jury proceeding are not cognizable on federal *habeas* review. *See Bingham v. Duncan*, No. 01CIV.1371(LTS)(GAY), 2003 WL 21360084, at *4 (S.D.N.Y. June 12, 2003) ("[C]laims of error relating to state grand jury proceedings are not cognizable on federal habeas review, since '[t]he right to testify before a grand jury is a state statutory right, and is not of constitutional dimension.'") (quoting *Green v. Artuz*, 990 F.Supp. 267, 273 (S.D.N.Y.1998)). *Bingham v. Duncan*, No. 01CIV.1371(LTS)(GAY), 2003 WL 21360084, at *4 (S.D.N.Y. June 12, 2003) (quoting *Green v. Artuz*, 990 F.Supp. 267, 273 (S.D.N.Y.1998)). Any defects in the Petitioner's indictment were cured by the verdict rendered against him requiring proof of his guilt beyond a reasonable doubt. *See Robinson v. LaClair*, No. 09-CV-3501 KAM, 2011 WL 115490, at *8 (E.D.N.Y. Jan. 13, 2011); *accord Figueroa v. Donnelly*, No. 02 CIV. 6259 (NRB), 2003 WL 21146651, at *8 (S.D.N.Y. May 16, 2003) (denying a petitioner's claim for *habeas* relief on the merits because "it has been consistently held that claims of error in a state grand jury proceeding are not cognizable for federal habeas corpus review after a petit jury has convicted the petitioner.") Given Petitioner's failure to state a federal question necessary for *habeas* review on this issue, the claim is denied.

### 5. Charge on Penal Law 20.00

Petitioner argues that the trial court erred when it charged the jury on accessorial liability. Petitioner's Mem. at 84–87. Petitioner argues that there was no evidence admitted at trial, aside from impermissible accomplice testimony, that Petitioner solicited or intentionally aided another person to engage in a crime, nor that he had the mental culpability for the commission of the offense. *Id*. In the Report, Judge Davison found that this claim is barred from federal *habeas* review because the Second Department denied the claim on an independent and adequate state procedural ground by invoking New York's contemporaneous objection rule to conclude that the issue was "unpreserved for appellate review." Report at 49–50. Petitioner objects to Judge Davison's conclusion because he made the objection at the close of the government's case, at his sentencing, and in his appeals and post-conviction petitions. Objections at 11.

The Court agrees with Judge Davison that the Second Department denied Petitioner's claim by invoking New York's contemporaneous objection rule, N.Y. Crim. Proc. Law § 470.05, when it concluded that petitioner's claim was "unpreserved for appellate review." Report at 50. This was an independent and adequate state court finding of procedural default that bars federal *habeas* review of the claim unless Petitioner shows cause for the default and resulting prejudice, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Harris v. Reed*, 489 U.S. 255, 262 (1989). *Habeas* review is barred based on the independent and adequate state procedural ground despite the fact that the Second Department also determined that the claim failed on the merits. *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, n. 4 (2d Cir. 2000); *Harris*, 489 U.S. 255, n. 10 ("We note that we have held that where a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved.") Petitioner does not show cause and resulting prejudice, nor a

fundamental miscarriage of justice sufficient for the court to circumvent the procedural bar; therefore, this claim must be dismissed.

### D.  Legal Insufficiency of Evidence Claims

Petitioner claims that the evidence presented at trial was legally insufficient to convict him of (1) attempted escape, (2) bribery in the third degree, (3) promoting prison contraband in the first degree, (4) conspiracy in the fourth degree, and (5) promoting prison contraband in the second degree.  Petitioner's Mem. at 88–110.  In the Report, Judge Davison concluded that each of Petitioner's claims of legal insufficiency of evidence must be dismissed because, under AEDPA's deferential standard of review, the state court's denial of these claims was not contrary to, nor an unreasonable application of, clearly established federal law.  Report at 51.  Judge Davison explains that Petitioner did not meet his burden to show that, viewing the evidence in the light most favorable to the prosecution, no rational jury could have found the essential elements of the offenses beyond a reasonable doubt.  *Id.*  Petitioner objects to Judge Davison's conclusion by rehashing his original arguments that there was insufficient evidence to support his conviction.  Objections at 11.

Petitioner's objections to this portion of Judge Davison's Report do not warrant *de novo* review because they are general, conclusive, and reiterate the arguments presented to, and considered by Judge Davison.  *See Genao v. United States*, No. 08 Civ. 9313 (RO), 2011 WL 924202, at *1 (S.D.N.Y. Mar. 16, 2011) ("In the event a party's objections are conclusory or general, or simply reiterate original arguments, the district court reviews the [R&R] for clear error.").  Having carefully reviewed Judge Davison's report on Petitioner's legal insufficiency of evidence claim, the court finds no clear error, and therefore adopts Judge Davison's recommendation that this claim be dismissed for the reasons stated in the Report.

## IV. CONCLUSION

For the reasons set forth above, the Court adopts Judge Davison's Report in its entirety and Zimmerman's petition for a writ of habeas corpus is DENIED. As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012). The Clerk of Court is respectfully directed to enter a judgment in favor of Respondent, mail a copy of this Opinion to Petitioner, and close the case.

It is SO ORDERED.

Dated:   December 4, 2018
            New York, New York

Edgardo Ramos, U.S.D.J.